**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| v. : | CASE NO.: 5:17-CR-1-1 (LAG) |
| : | |
| ANTONIOUS G. LOCKHART, : | |
| : | |
| Defendant. : | |
| : | |

# ORDER

On December 4, 2017, Defendant Antonious G. Lockhart was sentenced to one hundred twenty (120) months of imprisonment, followed by a three-year term of supervised release, after pleading guilty to Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922 (g)(1) and 924 (a)(2). (Docs. 68, 82, 87; *see* Doc. 1 at 2). At sentencing, the Court denied the Defendant's request to impose the federal sentence to run concurrently to the parole revocation sentence he was serving in Putnam County Superior Court Case 09-CR-00146 and directed that the sentence run consecutively to the state sentence. (Doc. 101 at 10:17–12:15). Defendant filed a Motion Under 18 U.S.C. § 3585(b) and USSG § 5G1.3(b) seeking credit towards his federal sentence for time spent in state confinement beginning on December 2, 2015. (Doc. 90). The Court denied Defendant's Motion on April 13, 2022. (Doc. 93). Defendant filed a Notice of Appeal on May 23, 2022. (Doc. 94). The Notice was signed but not dated; accordingly, the Court of Appeals remanded this case "to the district court to determine, as a factual matter, whether [Defendant] Lockhart's notice of appeal was timely." (Doc. 100 at 4). The Eleventh Circuit further stated, "if the district court determines that Lockhart did not timely deliver the notice of appeal to prison authorities, it must also determine whether the delay was caused by either good cause or excusable neglect because the postmark date on the notice of appeal falls within the 30-day extension period that would have begun to run on April 27, 2022." (*Id.*). On June 13, 2023, the Court ordered the Government to file a brief responsive to the issues raised by

the Eleventh Circuit regarding the timeliness of Petitioner's Notice of Appeal. (Doc. 103 at 3). The Government filed a brief in response to the Court's Order and the Petitioner replied in a timely manner. (Docs. 105, 106).

The deadline for Defendant to submit the Notice of Appeal was April 27, 2022, fourteen days after the Court entered its Order on Motion to Receive Credit for Time Served. (*See* Docket; Doc. 93); *see* Fed. R. App. P. 4(b)(1)(A)(i). Defendant's Notice was postmarked on May 19, 2022, and docketed on May 23, 2022. (Doc. 94-1; *see* Docket). The typed Notice includes the following date line: "April \_\_\_\_, 2022;" but Defendant failed to write in the actual date. (*See* Doc. 94). "Lockhart states, [however,] under penalty of perjury, that he gave the packet to prison officials on April 21, 2022." (Doc. 100 at 4).

In its Response to the Appeal, the Government argued that the appeal should be dismissed as untimely. (Doc. 100 at 2). Defendant asserts that "the notice of appeal was placed in the prison mail box on Wednesday, April 21, 2022. It was therefore, mailed on time." *United States of America v. Antonious G. Lockhart (Lockhart II)*, No. 22-11791, (Doc. 14 at 2) (11th Cir. Sept. 1, 2022). The Government argues that (1) "Lockhart's notice of appeal was not timely filed because the evidence shows that it was not delivered to the mailroom at FCI Williamsburg by April 27, 2022—the 14th day from the entry of the order he wished to appeal"; (2) "Lockhart's self-serving statement is implausible and not credit-worthy"; (3) "Lockhart's self-serving statement is insufficient to overcome the strong presumption of regularity that attaches to the actions of the BOP staff at FCI Williamsburg"; and (4) "Lockhart has not carried his burden of showing 'excusable neglect' or 'good cause' to justify the late filing of his notice of appeal, and he is estopped from doing so in light of his assertion that he timely filed it." (Doc. 105 at 2–11).

"Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Johnson v. Sec'y, Fla. Dep't of Corr.*, No. 22-12002, 2023 WL 1466599, at *1 (11th Cir. 2023) (per curiam) (quoting *Jeffries v. United States,* 748 F.3d 1310, 1314 (11th Cir. 2014) (per curiam)); *see also Houston v. Lack*, 487 U.S. 266, 275–76 (1988). "Absent contrary evidence, such as prison logs or other records, we assume that a prisoner delivered a filing to prison authorities on

the day when the prisoner signed it." *Johnson*, 2023 WL 1466599, at *1 (citing *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam)). Further, "[t]he burden is on the Government to prove the [filing] was delivered to prison authorities on a date other than the date the prisoner signed it." *Jeffries*, 748 F.3d at 1314 (citing *Washington*, 243 F.3d at 1301); *see also Natson v. United States*, 494 F. App'x 3, 5 (11th Cir. 2012) ("In the *Washington* opinion, we wrote (and we accept today) that the Government had the burden to prove the date a petition was delivered was a date other than the date claimed by the prisoner-petitioner[.]" (citing *Washington*, 243 F.3d at 1301)).

In cases where a filing is undated, the Eleventh Circuit has held the Government to the burden of proving that the filing was not delivered to prison officials on the date the prisoner claimed to have delivered it. See *Bullock v. United States*, 655 F. App'x 739, 741 (11th Cir. 2016) (per curiam). In *Nix v. United States*, the movant—like Defendant here—failed to date a motion. Nos. 12-81106-CIV-MIDDLEBROOKS, 09-80015-CR-MIDDLEBROOKS, 2013 WL 6188976, at *2 (S.D. Fla. July 19, 2013). In *Nix*, "Movant's motion to vacate was entered on the court's docketing system on October 9, 2012, and indicates that it was placed in the institutional legal mail 'on the ____ day of September 2012.'" *Id.* The district court applied the prison mailbox rule and held that because "[t]he Government . . . offered no evidence to support a conclusion that the motion was delivered at a later date[,]" the motion "should therefore be deemed timely." *Id.* (citing *Washington*, 243 F.3d at 1301). Likewise, in *Heidemann v. United States*, the district court considered an undated motion and determined that "where there is ambiguity regarding the date the motion is delivered to prison authorities, the burden is upon the prison officials, or upon the government, to demonstrate the date the motion was delivered to prison authorities." No. 03-T-169-S, 2004 WL 633241, at *2 (M.D. Ala. Mar. 26, 2004) (first citing *Garvey v. Vaughn*, 993 F.2d 776, 780–81 (11th Cir. 1993); and then citing *United States v. O'Kaine*, 971 F. Supp. 1479, 1481 (S.D. Ga. 1997)).

The rationale for placing the burden on the Government is grounded in the reasoning underpinning the prison mailbox rule. As explained by the Supreme Court,

3

> the moment at which *pro se* prisoners necessarily lose control over and contact with their notices of appeal is at delivery to prison authorities . . . . [A] *pro se* prisoner has no choice but to hand his notice over to prison authorities for forwarding to the court clerk . . . . The *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox—he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date. Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one. Relying on the date of receipt, by contrast, raises such difficult to resolve questions as whether delays by the United States Postal Service constituted excusable neglect and whether a notice stamped "filed" on one date was actually received earlier. . . . These questions are made particularly difficult [where] . . . delays might instead be attributable to the prison authorities' failure to forward the notice promptly. Indeed, since, . . . the prison's failure to act promptly cannot bind a *pro se* prisoner, relying on receipt in [such a] context would raise yet more difficult to resolve questions whether the prison authorities were dilatory. ***The prison will be the only party with access to at least some of the evidence needed to resolve such questions—one of the vices the general rule is meant to avoid—and evidence on any of these issues will be hard to come by for the prisoner confined to his cell, who can usually only guess whether the prison authorities, the Postal Service, or the court clerk is to blame for any delay.***

*Houston*, 487 U.S. at 275–76 (footnote and citations omitted); *see also Garvey*, 993 F.2d at 780–81 (citing *Houston*, 487 U.S. at 270–71, 75); *Houser v. United States*, 808 F. App'x 969, 971 (11th Cir. 2020) (per curiam) (citing *Jeffries*, 748 F.3d at 1314).

Here, Defendant stated "under penalty of perjury, that he gave the packet to prison officials on April 21, 2022." (Doc. 100 at 4). Furthermore, there is nothing in the record which raises a question as to his credibility. *See Jeffries*, 748 F.3d at 1315 (noting that the court could consider whether the defendant's "testimony was . . . credible in determining [whether] the Government carried its burden."). As was the case in *Houston*, the

4

Government is in the best position to provide evidence of the date on which Defendant delivered the Motion to prison officials. 487 U.S. at 275. Thus, it is appropriate to hold the Government to the burden of proving that Defendant did not deliver his Notice to the prison mailbox on the date he states that he did.

The Government relies on the declaration of Jonathan Morris, the Case Management Coordinator and supervisor of the mailroom at FCI Williamsburg. (Doc. 105 at 3). In his Declaration, Mr. Morris states that he has worked as the Case Management Coordinator and supervisor for the mailroom since May 27, 2018. (Doc. 105-1 ¶ 1). Mr. Morris explains that "[l]egal mail is brought to the mailroom by inmates each day during the noon meal time" and "is taken to the United States Post Office on the same afternoon that it is received in the mailroom or, at the latest, the next business day after it is received in the mailroom." (*Id.* ¶ 2). He details the regular schedule of the mailroom and states that he is unaware "of any instance in which outgoing legal mail was delivered into the custody of the United States Postal Service later than the next business day after it was received in the mailroom." (*See id.* ¶¶ 4–5). Mr. Morris also states that the policies and procedures detailed above "were in full force and effect and being followed in April and May 2022" and that "[i]f Mr. Lockhart had delivered his notice of appeal to the mailroom at FCI Williamsburg on Thursday, April 21, 2022, as he has claimed, that notice of appeal . . . would have been delivered into the custody of, and postmarked by, the United States Postal Service no later than Friday, April 22, 2022." (*Id.* ¶ 7). Importantly, Mr. Morris also declares that "FCI Williamsburg does not maintain a written log of outgoing prisoner mail." (*Id.* ¶ 6).

"[B]are evidence of routine mail procedure is insufficient to overcome a prisoner's sworn statement on when he delivered a specific legal document to proper authorities." *Bullock*, 655 F. App'x at 741–42 (finding that "affidavits from mailroom supervisors . . . about routine mailroom procedures", "a copy of the envelope received by the district court containing . . . [the] motion", and "records of [defendant's] commissary purchases" were insufficient to satisfy the government's burden of proof that the defendant delivered his motion on a date other than he claims). The same is the case here. The policies and procedures described by Morris are not proof of what occurred in this specific instance;

5

and there is no evidence that the prison does anything to ensure that it adheres to those policies and procedures as, according to Mr. Morris, "FCI Williamsburg does not maintain a written log of outgoing prisoner mail." (Doc. 105-1 ¶ 6).

The Government also seeks to rely on the fact that other filings signed by Defendant were postmarked on the day after the date it was signed. (Doc. 105 at 7). For example, Defendant's Reply Brief in the Eleventh Circuit was dated August 29, 2022, and is postmarked August 30, 2022. *Lockhart II*, No. 22-11791 (Doc. 14 at 3–4). But, again, the fact that prior mail was handled in a timely manner is not proof that Defendant did not mail this specific filing on the date he claims. Nor has the Government proffered any evidence to support a finding that Defendant is not credible or diligent. *See Jeffries*, 748 F.3d at 1315 (holding that, "in deciding whether a filing was in fact ever delivered to prison authorities, a court can consider whether the prisoner exercised the diligence 'expected of a reasonable person in his circumstances' in following up on a purported filing[,]" and further holding that the court can consider whether the defendant's "testimony was . . . credible in determining the Government carried its burden"). Thus, the Government's evidence is not "sufficient to rebut [Defendant's] contention that he delivered [a] timely [Notice of Appeal] to prison authorities[.]" *Bullock*, 655 F. App'x at 742 n.3. Accordingly, as the Government has not met its burden, the Court determines that Defendant's Notice of Appeal was timely filed.

**SO ORDERED**, this 20th day of March, 2024.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**

6